IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL LAFITTE DUMONDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | CIVIL ACTION NO.99-AR-2081-S |
| ) | |
| ) | |
| UNITED STATES MARSHAL'S ) | |
| SERVICE and PETE PATTON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The court has considered the entire file in this action, including the Magistrate Judge's Report and Recommendation and the plaintiff's objections to the report and recommendation. The court further states as follows.

The plaintiff alleges that his back was injured when unnamed federal deputy marshals drove across a field while transporting him from the Walker County jail to federal court in Birmingham. After his court appearance, the plaintiff was returned to the Walker County jail. The plaintiff contends that because he was a federal detainee, Deputy United States Marshal Pete Patton was responsible for providing him with adequate medical treatment for his back injuries. The plaintiff states that he and his mother informed Patton in numerous letters that the plaintiff was not receiving medical

treatment for pain.[1]

In *United States v. Doe*, 38 F.3d 1559 (11th Cir. 1559), a *Bivins* action, federal marshals put the plaintiff, a federal detainee, in certain county jails which had contracted with the Marshals Service for the housing of federal prisoners. Joseph Enders, Assistant Director of the U.S. Marshals Service, signed those contracts on behalf of the Marshal's Service. The plaintiff had complained to federal marshals about alleged unconstitutional conditions of confinement in those jails, including inadequate medical care. The Marshals failed to respond to those complaints. The court discussed the defense of qualified immunity:

> Because all of the marshals service officials were acting within the scope of their discretionary authority, the burden under *Zeigler* shifted to Jordan to show that the Marshals " 'violated clearly established constitutional law' " under *Harlow*. *Sammons*, 967 F.2d at 1539 (quoting *Zeigler*, 716 F.2d at 849). To be clearly established, the "contours" of an asserted constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). This does not mean that a court must have previously found the very action in question unlawful, but it does mean that "in the light of pre- existing law the unlawfulness must be apparent." Id.

*Id.* at 1556. The court then discussed conditions-of-confinement law, and held that the marshals were due summary judgment:

> While the conditions in the DeKalb County jail were doubtless unpleasant, we held [in *Hamm v. DeKalb County*] that they were not unconstitutional. "The fact that the food occasionally contains foreign objects or sometimes is served cold ... does not amount to a constitutional deprivation.... The fact that Hamm temporarily had to sleep upon a mattress on the floor or on a table is not necessarily a constitutional violation." *Id.* at 1575. Even when

---

[1]The plaintiff does not contend that he had any contact with Deputy Marshal Patton other than these letters.

> considered in conjunction with Hamm's medical care claims, the "totality of conditions" was not unconstitutional. *Id.* at 1575-76.
>
> In light of our decision in *Hamm*, a reasonable government official would not have understood the conditions in Hillsborough or Gilchrist County jails to be an unconstitutional deprivation of "a single human need." *Wilson*, 501 U.S. at 305, 111 S.Ct. at 2327. Thus, no reasonable government official would have concluded that contracting with these jails or transporting Jordan to them was a violation of Jordan's constitutional rights.
>
> IV. Conclusion
>
> Determining when overall conditions of confinement are "sufficiently serious" to violate the constitution demands a fact-intensive analysis. It involves the application of vague "contemporary standards of decency" to an amorphous collection of circumstances, and it is often a very difficult task for a court to perform. Absent a court ruling, we would expect a reasonable government official to "know" that overall conditions of confinement are clearly unconstitutional only in a truly extreme case. This is not such a case. Because a reasonable government official in one of the marshals' positions would not have understood his actions to violate Jordan's constitutional rights in light of the clearly established law at that time, the district court erred in denying the marshals' motion for summary judgment based on qualified immunity.

*Id.* at 1567. In a separate opinion in which Senior Circuit Judge Clark concurred in part and dissented in part, he stated that "the marshals who transported Jordan to the county jails are entitled to qualified immunity, <u>as these marshals had no responsibility either for the conditions of the jails or for Jordan's placement with them</u>." *Id.* (Emphasis added.) Judge Clark further stated, however, that in his opinion Enders was not entitled to qualified immunity.

> The record in this case establishes genuine issues of material fact as to whether Enders should have known that the conditions in the county jails so threatened the health and safety of federal prisoners detained therein as to violate the Constitution.
>
> Enders served as Assistant Director for Operations Support for the United States Marshals Service. As such, he was the authorizing official for the United States Marshals Service on intergovernmental agreements with local jails for housing federal prisoners. It is Enders who authorized and signed the contract with Hillsborough County jail on behalf of the Marshals Service. This contract specifically provides: "The County agrees to allow periodic inspections of the

> facility by U.S. Marshals Service Inspectors." (R1-10 Exh. A at Art. IX ¶ 1). Enders, however, authorized submission of copies of Florida Department of Corrections' Inspection Reports in lieu of regular U.S. Marshals Service inspection reports. Thus, the record establishes an issue of fact whether Enders knew or should have known of the jail conditions reflected in the Florida Department of Corrections' Inspection Reports.

*Id.* at 1568.

The same issue was presented in *Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998). In that case, the plaintiff contended that defendant Pam Harding, a criminal investigator for the Marshals Service, transported him to a "contract" city jail where the conditions of confinement amounted to a violation of the plaintiff's constitutional rights. The court stated:

> The only evidence in the record that connects Harding to Wilson is her transportation of him to [the Montgomery City Jail] and to court proceedings when he was a federal pretrial detainee. [FN6] Our court has determined that marshals' transporting federal pretrial detainees is within the scope of their discretionary authority. See *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir.1994). At the time that Harding transported Wilson, however, no clearly established law would have informed a reasonable government official that transporting a federal pretrial detainee to a local jail with which the Marshals Service had an intergovernmental agreement was unconstitutional. See *id.* at 1566-67. Accordingly, Harding was entitled to summary judgment based on qualified immunity.
>
> FN6. To the extent Wilson suggests that knowledge of the Marshals Service annual inspection report on MCJ should be imputed to Harding, we find this speculation to be supported by neither the facts nor the law. <u>Even if she were aware of the inspection report, there is no evidence whatsoever that Harding had any control over the operation of MCJ and the confinement conditions there</u>.

*Id.* at 1288-89 (Emphasis added).

The court takes judicial knowledge of the fact that the United States Marshal for the Northern District of Alabama has contracts with various county jails for housing and providing medical care for federal detainees. Such county jails have established

procedures by which inmates may register medical complaints and receive treatment when appropriate. The responsibility of deciding whether or not a prisoner is actually in need of medical treatment rests with the persons the jail designates to make such decisions. If it were otherwise, every federal prisoner who is lodged in county jails could properly contact the Marshal's office about aches and pains which he thinks are not being treated properly. If, however, this lawsuit were against the person who signed the contract with the Walker County jail, the factual questions would arise as to whether the medical attention provided jail inmates did not meet the constitutional minimum at the time the contract was signed, and whether this was known or should have been known by the person representing the Marshals Service. This action is not, however, against the person who signed that contract for the Marshal's Office.[2] The sole defendant in this case is Pete Patton, a deputy marshal. Patton was not a party to the Marshal's contract with the Walker County jail. Neither did he as a deputy marshal have any control over the operation of that facility. Therefore, the fact, if it is a fact, that Patton did not respond to the plaintiff's letters wherein he complained that he was not receiving adequate medical treatment in the Walker County jail does not state a constitutional claim against Pete Patton.[3]

---

[2] These contracts were signed by the federal Contracting Officer on behalf of the Marshal's office.

[3] The plaintiff has the right to consider a 42 U.S.C. § 1983 claim against the jail officials who had the responsibility of responding to the plaintiff's medical complaints. (According to the complaint, the plaintiff did receive treatment at what the plaintiff designates as "the Walk-in Clinic" in Jasper, Walker County, Alabama, where a doctor prescribed medication. The plaintiff is no longer in the Walker County jail.)

Wherefore, the court hereby adopts and approves the findings and recommendation of the Magistrate Judge as the findings and conclusions of the court. In accord with the recommendation, and the court's further comments, this complaint is due to be dismissed. An appropriate order will be entered.

DONE, this 23rd day of March, 2001.

_____
WILLIAM M. ACKER, JR.,
UNITED STATES DISTRICT JUDGE